UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES | CRIMINAL NO. 11-CR-00317-01 |
| | [CIVIL NO. 19-CV-0017] |
| VERSUS | |
| | JUDGE S. MAURICE HICKS, JR. |
| DARIEN L. RELIFORD | |
| a/k/a "Big Troy" | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Record Document 602) filed by Petitioner Darien L. Reliford ("Reliford"). The Government has answered and opposed the motion, see Record Document 610, and Reliford has filed a reply brief in response to the Government's opposition, see Record Document 612. Having reviewed the record and applicable law, the Motion will be **DENIED IN PART** and **DISMISSED IN PART** for lack of jurisdiction. Because the undersigned is able to make this determination based on the record, transcripts, and briefs filed by the parties, no evidentiary hearing is necessary.[1]

**A. Factual Background and Procedural Posture**

Darien L. Reliford, also known as "Big Troy," was the primary defendant in a drug distribution conspiracy case involving 13 total defendants. Reliford was charged December 14, 2011, with counts 1 through 5 in a lengthy indictment, which included

---

[1] No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record. See United States v. Green, 882 F.2d 999, 1008 (5th Cir. 1989).

charges for conspiracy to distribute cocaine, distribution of cocaine and a mixture containing cocaine, and possession of a firearm by a convicted felon, and also included a forfeiture allegation for amounts of currency seized (including from Reliford) and other property. See Record Document 1. Having been initially set to enter a guilty plea February 16, 2012, while being represented by the Federal Public Defender, see Record Document 181, the change of plea hearing was upset and retained counsel William G. Nader enrolled for Reliford, see Record Documents 182, 198. Subsequently, the Government filed a notice of intent to seek enhanced punishment by reason of a prior felony drug offense (a 2001 Louisiana state conviction for possession with intent to distribute cocaine). See Record Document 214. This enhancement would subject Reliford to a statutory sentencing range of 20 years to life pursuant to the version of 21 U.S.C. § 841(b)(1)(A) current at the time.

Reliford then pleaded guilty to count 1 of the indictment only (the conspiracy charge) on July 13, 2012. See Record Document 251. Reliford was sentenced on November 9, 2012, to a term of imprisonment of 327 months as to count 1, followed by ten years of supervised release, a sentence at the upper end of the guidelines range, with no objections to the PSR. See Record Document 291. Although Mr. Nader filed a notice of appeal on behalf of Reliford, see Record Document 361, nothing further was filed and the appeal was dismissed for want of prosecution by the Court of Appeals for the Fifth Circuit on January 10, 2013. See Record Document 385.

Reliford filed *pro se* his first 28 U.S.C. § 2255 motion to vacate on January 2, 2014. See Record Document 424. Although the initial § 2255 motion raised several claims related to ineffective assistance of counsel during sentencing, Judge Walter noted that

he construed it as also raising a claim of ineffective assistance of counsel due to Mr. Nader never properly withdrawing as counsel or prosecuting Reliford's appeal. See Record Document 523 at 2–3. Judge Walter noted that dismissal of the appeal for want of prosecution provided evidence of ineffective assistance of counsel in that instance, dismissed all of Reliford's remaining § 2255 claims without prejudice, and granted relief May 23, 2016, by way of reinstatement of Reliford's criminal judgment so that an out-of-time appeal could be pursued. See id. at 5.

Reliford filed his out-of-time appeal, with Elizabeth Dougherty serving as his appointed appellate counsel.[2] See Record Documents 528, 529. The Fifth Circuit ultimately affirmed Reliford's conviction and sentence on June 13, 2017, in a brief per curiam opinion. See Record Document 559. The Supreme Court denied *certiorari* on March 19, 2018. See Record Document 572. Reliford has now followed up with a new § 2255 motion, filed January 7, 2019, under Record Document 602. A government opposition and follow-up reply by Reliford have also been filed. See Record Documents 610, 612.

### B. Threshold Barriers

#### 1. Timeliness

By statute, a motion by a federal prisoner seeking to collaterally attack his conviction or sentence is subject to a one-year statute of limitations. See 28 U.S.C. § 2255(f). This time period starts to run from a number of different dates, the most appropriate for this case being "the date on which the judgment of conviction becomes

---

[2] Mr. Nader, retained trial counsel, had passed away on October 4, 2014, and thus was not available for the out-of-time appeal or to respond to claims of ineffective assistance of counsel under the present § 2255 motion.

final." 28 U.S.C. § 2255(f)(1). Because of the out-of-time appeal granted Reliford,[3] his judgment of conviction did not become final until that direct appeal process was concluded with a denial of *certiorari* by the Supreme Court on March 19, 2018. See Record Document 572. Since the current § 2255 motion was filed January 7, 2019, less than one year after the Supreme Court's order, it is timely.

### 2. Second or Successive Motion

The statute also imposes a jurisdictional constraint when more than one § 2255 motion has been filed by a criminal defendant, in that a "second or successive motion" may only be considered by the district court if it has been previously authorized by the appropriate circuit court of appeals. See 28 U.S.C. § 2255(h). The instant § 2255 motion is the second such motion to have been filed in this criminal case, but that fact does not automatically render it a "second or successive motion" as contemplated by the statute. See Panetti v. Quarterman, 551 U.S. 930, 944, 127 S. Ct. 2842, 2853 (2007). However, where a first-filed § 2255 motion is granted in part, leading to an out-of-time appeal followed by a later § 2255 motion addressing the same claims and new ones, the Fifth Circuit applies *res judicata* principles to determine which claims are unauthorized "second or successive" claims as contemplated by the statute, and which are validly brought before the Court. See United States v. Orozco-Ramirez, 211 F.3d 862, 869–71 (5th Cir. 2000). In such a case, for claims to avoid the necessity of authorization from the court of appeals, they must either have previously been raised in the first § 2255 motion (but not yet disposed of on the merits), or they must arise from facts arising subsequent to the

---

[3] The out-of-time appeal, as discussed *supra*, was granted in response to a previously filed § 2255 motion. Judge Walter, in his order granting relief, also found that first § 2255 motion to have been timely filed. See Record Document 523 at 2 n.1.

initial § 2255 motion (such as ineffective assistance of counsel claims related only to the out-of-time direct appeal). See id.

Reliford raises a veritable laundry list of complaints in his current § 2255 motion and associated briefing.[4] See Record Documents 602, 602-1. But Reliford's first § 2255 motion (read together with his much-longer supporting brief) properly raised only the following ineffective assistance of counsel claims: (1) counsel's failure to request an additional two-point reduction in his Guidelines offense level at sentencing for acceptance of responsibility under U.S.S.G. § 3E1.1; (2) counsel's failure to object to the drug quantity attributed to Reliford (of 5 to 15 kg) in the presentencing report; (3) counsel's failure to withdraw his guilty plea (on an unspecified basis); and (4) counsel's failure to request a psychiatric examination.[5] See Record Document 424 at 4–8. Only claims based on facts subsequent to the first § 2255 motion, specifically claims of ineffective assistance of counsel on Reliford's out-of-time direct appeal, may be added to the above to avoid triggering the "second or successive motion" limitation in § 2255(h). Reliford has added the following claims in his current § 2255 motion or related brief concerning ineffective assistance of counsel on his out-of-time appeal: (5) counsel's failure to communicate with Reliford; (6) counsel's failure to raise all issues on appeal that Reliford believed should

---

[4] Reliford appears to raise even more new claims in his reply brief, see Record Document 612, but issues raised for the first time in a reply brief are considered waived and will not be considered by the Court. See Redhawk Holdings Corp. v. Schreiber, 836 F. App'x 232, 235 (5th Cir. 2020) (per curiam unpublished); United States v. Jackson, 426 F.3d 301, 304 n.2 (5th Cir. 2005) (citing Knighten v. Commissioner, 702 F.2d 59, 60 n.1 (5th Cir. 1983)). In any case, most of those claims would also have been classified as "second or successive" and similarly been beyond the jurisdiction of this Court even had they been properly presented in Reliford's § 2255 motion.

[5] As discussed *supra*, Reliford's first § 2255 motion also asserted a claim of ineffective assistance of counsel based on failure to prosecute the direct appeal, but that claim was already considered and remedied. See Record Document 523. In addition, in Reliford's supporting brief to his first § 2255 motion, he lists a total of 17 claims or arguments for vacating his sentence, but only these first four are actually briefed. See Record Document 425 at 3–4. Merely citing a legal claim in conclusory fashion without briefing or explaining how it applies to the petitioner's case results in waiver of the claim. See Woods v. Cockrell, 307 F.3d 353, 357 (5th Cir. 2002).

be addressed; and (7) counsel's failure to fully investigate impeachment evidence and cross-examine co-defendants.[6] See Record Document 602-1 at 4, 9.

As a result, only the seven claims listed above will be considered by this Court as being properly within its jurisdiction to address on the instant § 2255 motion. All other claims will be dismissed for lack of jurisdiction or for having been abandoned due to inadequate briefing, without prejudice to Reliford's right to seek leave from the Fifth Circuit to present those claims in an authorized subsequent motion. See United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000); United States v. Robinson, No. 3:07-CV-0037-D, 3:92-CR-365-D(27), 2007 WL 1053028, at *4 (N.D. Tex. Apr. 4, 2007).

### 3. Procedural Default

All of the claims properly brought before the Court by Reliford may be categorized as ineffective assistance of counsel claims. As such, these claims are not subject to the usual rules on procedural default, regardless of whether the issues were first raised on appeal or otherwise. See Massaro v. United States, 538 U.S. 500, 508–09, 123 S. Ct. 1690, 1696 (2003). In addition, a review of the Fifth Circuit's opinion affirming Reliford's sentence reveals that no ineffective assistance of counsel claims were actually adjudicated on direct appeal, so none of the above claims would be barred by the law of the case doctrine as having already been ruled upon. See Record Document 559; see also United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986).

---

[6] Again, Reliford lists several other claims in his brief in support of the current § 2255 motion as ineffective assistance of counsel claims regarding his direct appeal. See Record Document 602-1 at 4–5. However, other than those listed above, they are not briefed at all and will therefore not be considered. See supra n. 3. In addition, to the extent most of these additional claims concern issues he believes his appellate counsel was deficient in failing to bring before the court of appeals, they are effectively included within the claim listed as number 6 above: Reliford's complaint that his appellate counsel failed to assert the errors on appeal that he wanted her to.

### C. Analysis

#### 1. Ineffective assistance of counsel standard

The Sixth Amendment guarantees defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." Burdine v. Johnson, 262 F.3d 336, 344 (5th Cir. 2001). The Fifth Circuit has especially observed that "providing counsel to assist a defendant in deciding whether to plead guilty is 'one of the most precious applications of the Sixth Amendment.'" United States v. Rivas-Lopez, 678 F.3d 353, 356 (5th Cir. 2012) (cleaned up) (quoting United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004)). A federal convict asserting ineffective assistance of trial counsel must pass the two-prong test established in Strickland v. Washington. 466 U.S. 668, 104 S. Ct. 2052 (1984). The first prong requires a showing that representation by counsel "fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. The second prong requires a showing that this defective performance was "prejudicial to the defense." Id. at 692, 104 S. Ct. at 2067. "The inquiry is highly deferential to counsel." Anaya v. Lumpkin, 976 F.3d 545, 551 (5th Cir. 2020) (citing Strickland, 466 U.S. at 690, 104 S. Ct. at 2066).

#### 2. Failure to request a § 3E1.1 reduction

Reliford first claims that his counsel during sentencing, Mr. Nader, was deficient for failing to object to the presentence investigation report declining to award Reliford a three-level downward adjustment to his base offense level under U.S.S.G. § 3E1.1 because he was classified as a career offender under U.S.S.G. § 4B1.1. Sentencing

Guidelines § 3E1.1(a)[7] allows for a downward adjustment in offense level of two points for a defendant who demonstrates acceptance of responsibility, generally through pleading guilty. Sentencing Guidelines § 3E1.1(b) allows for a further one-point downward adjustment where the offense level is 16 or higher, the defendant has made a timely guilty plea, and the government moves for such an adjustment. Reliford's plea agreement incorporated such a motion by the government for the additional one-point adjustment. See Record Document 253 at 2.

However, the record directly contradicts Reliford's complaint on this issue, as he did receive the three-level downward adjustment that he complains was not sought by his counsel. His presentence investigation report clearly states, in its Guidelines sentence calculation section, that Reliford was given benefit of a full three-point downward adjustment under § 3E1.1, incorporating both the two-point adjustment under § 3E1.1(a) and the additional one-point adjustment under § 3E1.1(b) in accordance with the plea agreement. See Record Document 285 at 8. More importantly, although Reliford's offense level was also calculated alternately under the career offender provisions of U.S.S.G. § 4B1.1, the operation of § 4B1.1(b) still results in the three-point downward adjustment being applied for acceptance of responsibility, and the overall offense level was the same under both calculations. See id. at 8–9. Since the presentence investigation report was not objected to, and the sentencing court imposed a Guidelines sentence based on its adopted calculations without change, see Record Documents 291, 292, Reliford's claim of ineffective assistance on this point has no merit. Since he did in fact receive the

---

[7] The Court refers throughout to the version of the United States Sentencing Guidelines in effect as of November 1, 2011, the version used when Reliford was sentenced, although in this specific instance the referenced section has remained unchanged.

downward adjustment he seeks and cannot have received any greater downward adjustment under the referenced Guidelines sections, he cannot have suffered any prejudice even if his counsel failed to act appropriately on this specific matter. Therefore, relief will be denied on this claim.

### 3. Failure to object to the drug quantity attributed at sentencing

Reliford next asserts that Mr. Nader acted unreasonably by not objecting to the drug quantity attributed to Reliford for purposes of sentencing. See Record Document 602-1 at 5, 21. In calculating Reliford's offense level for purposes of the Sentencing Guidelines, Reliford was held accountable for "45.2 grams of cocaine base (crack) and 5 kilograms of cocaine powder." Record Document 285 at 7. Because of the combination of controlled substances, both were converted to equivalent weights of marihuana utilizing the drug equivalency tables in U.S.S.G. § 2D1.1 cmt. n.10(E). The Court discerns no error in these calculations or the resulting offense level that would require an objection by defense counsel.

Although Reliford may complain about the drug quantities for which he was held accountable, these specific amounts were used in accordance with the amounts he agreed to in the plea agreement. Reliford agreed to plead guilty to count one of the indictment, see Record Document 253 at 1, which was specifically for conspiracy to possess with the intent to distribute *5 kilograms or more* of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, see Record Document 1 at 2 (emphasis added). In the signed factual basis Reliford submitted in support of his plea of guilty, he admitted not only to involvement in transactions involving significant amounts of cocaine powder, but also to ownership of a

total of 45.2 grams of crack cocaine (cocaine base) as used in the Sentencing Guidelines calculations.[8] See Record Document 253-3 at 2. In addition, when the trial court addressed Reliford at his change of plea hearing, Reliford was specifically asked whether he understood that he was pleading guilty to an offense involving a minimum of "5 kilos or more of cocaine." Record Document 535 at 6. Reliford responded in the affirmative. See id. It would not be reasonable for Reliford's attorney to object at sentencing to drug quantities which Reliford had already agreed under oath and in his signed plea agreement to be held responsible for.

More importantly, because Reliford was also sentenced as a career offender through the operation of U.S.S.G. § 4B1.1, the same total offense level was reached through operation of that section, regardless of the amount of controlled substances involved, and thus any successful objection to the amount of cocaine and cocaine base for which Reliford was held accountable would have been fruitless, since the same Guidelines sentencing range would still have been applied. Therefore, Reliford has failed to show that Mr. Nader's omission was objectively unreasonable or that it prejudiced the outcome of his sentencing in any way. Thus, relief will be denied on this claim.

### 4. Failure to withdraw guilty plea

Reliford further asserts that he should have been allowed to withdraw his guilty plea, or more specifically perhaps that counsel was ineffective for taking steps to withdraw his guilty plea, since there is no record that Reliford actually attempted to have his guilty plea withdrawn under Federal Rule of Criminal Procedure 11(c). The only reasoning that

---

[8] The Court notes that despite the inclusion of the cocaine base, the operation of the calculations under U.S.S.G. § 2D1.1(c) to determine base offense level end up coming out the same with or without the addition of the cocaine base, as the substantial amount of cocaine powder involved in this case leads to a higher base offense level on its own and therefore ends up controlling the application of the Guidelines.

Reliford gives that his guilty plea should have been withdrawn is that he would not have pleaded guilty had he been properly advised by his trial counsel, Mr. Nader, of the maximum possible sentence or enhancements to be applied. See Record Document 602-1 at 2, 20. The Court finds it difficult to evaluate Mr. Nader's performance on this point, since he is now deceased and is not available to enlarge the record with testimony or an affidavit as to the discussions that took place between himself and Reliford prior to the change of plea hearing. However, even if the Court were to give Reliford the benefit of the doubt and assume *arguendo* that Mr. Nader was ineffective by failing to fully inform Reliford of the potential sentence range under the guilty plea, Reliford cannot show that this deficient performance was prejudicial. See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

For a guilty plea to be valid, it must be entered "knowingly, voluntarily, and intelligently." United States v. Hernandez, 234 F.3d 252, 254 (5th Cir. 2000) (quoting Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000)). "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" Id. at 255 (quoting Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1712 (1969)). When it comes to a sentencing range, this standard requires only that a defendant understand "the maximum prison term and fine for the offense charged." Burdick v. Quarterman, 504 F.3d 545, 547 (5th Cir. 2007) (quoting United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990)).

The Court identifies from the record at least four times—three prior to entering his guilty plea and once afterwards, but before sentencing—when Reliford was given notice

of the potential minimum and maximum sentence and enhancements he faced independently of any information or advice he would have been given by Mr. Nader. First, shortly after Mr. Nader's enrollment as retained defense counsel, and several months prior to Reliford's change of plea hearing, the Government filed a Notice and Information Pursuant to 21 U.S.C. § 851 to establish Reliford's prior felony drug conviction, specifically noting that this subjected Reliford to an enhanced statutory sentencing range of 20 years to life imprisonment if convicted of count 1 of the indictment. See Record Document 214. Secondly, the written plea agreement Reliford signed states clearly, in bold lettering and underlined, that the punishment he faced under count 1 was a term of imprisonment of not less than 20 years nor more than life (or a fine of up to $20,000,000 or both), expressly referring back to the filed Notice and Information above. See Record Document 253 at 2. Reliford concurrently signed an Understanding of Maximum Penalty and Constitutional Rights which reiterates his understanding of the charge and maximum possible penalty. See Record Document 253-1 at 1. Thirdly, at the change of plea hearing itself, Judge Walter—in accordance with his duties under Federal Rule of Criminal Procedure 11(b)(1)—read to Reliford the possible minimum and maximum penalty not once, but twice, and asked Reliford whether he understood, to which Reliford answered in the affirmative. See Record Document 535 at 6–7. Judge Walter also explained the operation of the Sentencing Guidelines and their discretionary nature. See id. at 9. Finally, at Reliford's sentencing hearing, he was asked directly by Judge Walter whether he had received a copy of the presentence investigation report, to which he answered he had, and Reliford also affirmed that he had no objection to its contents. See Record Document 536 at 2. This written presentence investigation report contained information that would

have informed Reliford not only of the statutory minimum and maximum sentence applicable, but also of the specific enhancements being applied and the Guidelines range calculated as a starting point for Judge Walter's sentence. See Record Document 285 at 7–9, 26, 28.

Because Reliford cannot show that he was unaware of the potential sentence he faced even in the absence of proper advising from Mr. Nader, he cannot show that further notice from Mr. Nader would have resulted in Reliford refusing to plead guilty. Thus, he cannot meet the prejudice prong under Strickland. Similarly, if his claim is also viewed as one of ineffective assistance of appellate counsel in not raising invalidity of his guilty plea on appeal on the same basis, the same evidence contradicts any suggestion that he would have prevailed on appeal in having his guilty plea invalidated, and he would still fail to meet the prejudice prong under Strickland. Therefore, relief will be denied on this claim.

### 5. Failure to request a psychiatric examination or competency hearing

Reliford's final claim relative to the assistance of his trial counsel is that Mr. Nader was ineffective by not requesting a psychiatric examination or competency hearing. Reliford asserts—based primarily on his own affidavit—that he suffers from "an intense mental incompetent, Bi-polar and paranoia schizophrenia [sic]." See Record Document 602-2 at 8. Reliford also provides an affidavit from Jacqueline Haley (Reliford's girlfriend) stating that Haley was the one to have retained Mr. Nader on Reliford's behalf, and that Haley informed Mr. Nader of Reliford's "incompetence." See id. at 7. An additional affidavit is provided from Ochelata Reliford (Reliford's nephew), stating that the affiant has "guardianship" over Reliford due to Reliford's need for assistance in daily activities, specifically in correctly administering medications and securing him from others due to

his "vulnerability to trust." See id. at 5. An attached photocopy of several United States Treasury checks is apparently intended to show that in March, May, and June of 2012 Ochelata Reliford was receiving Supplemental Security Income ("SSI") checks on behalf of Darien Reliford. See id. at 6. No other information is provided regarding these checks or why Reliford would have qualified for SSI.

"Competence to plead guilty . . . is measured by the same standard as competence to stand trial." Austin v. Davis, 876 F.3d 757, 782 (5th Cir. 2017) (citing Godinez v. Moran, 509 U.S. 389, 398, 113 S. Ct. 2680, 2686 (1993)). A defendant may be found competent to stand trial—and thus to change his plea to guilty—if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and [if] he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 788 (1960). As Reliford's retained counsel for pre-trial plea negotiations, Mr. Nader would have been in the best position to determine whether Reliford was indeed competent to stand trial or enter a guilty plea. While Mr. Nader is no longer available to provide further information regarding his interactions with Reliford, the Court continues to give Mr. Nader the benefit of a presumption of adequate assistance and the exercise of reasonable judgment. See Cullen v. Pinholster, 563 U.S. 170, 189, 131 S. Ct. 1388, 1403 (2011).

During Judge Walter's examination of Reliford during his change of plea hearing, Judge Walter specifically inquired of Mr. Nader as to Reliford's competence and understanding of the proceedings. See Record Document 535 at 4. Mr. Nader responded on the record that he had no doubt as to Reliford's competence, and Judge Walter similarly found him competent at the change of plea hearing. See id. Given the evidence

provided by Reliford that indicates that Mr. Nader was specifically made aware of prior mental health issues that might affect Reliford's competence to stand trial, and in light of the presumption of adequate assistance afforded Mr. Nader, the Court must conclude that Mr. Nader would have made any necessary inquiries he felt necessary into Reliford's competence to enter a guilty plea and had affirmatively decided, in his professional judgment, that there was no nonfrivolous basis on which to request a competency hearing prior to entry of a guilty plea. Thus, Reliford has failed to show any objectively ineffective assistance by Mr. Nader on this point.

In addition, even if Mr. Nader's performance was defective in failing to request a competency hearing by the court, Reliford must also show prejudice, or that such a competency hearing would have resulted in him not pleading guilty. Since Reliford provides no evidence that he was in fact incompetent to enter a guilty plea, he cannot succeed on this prong of the Strickland analysis, either. Aside from the aforementioned affidavits by Reliford and his girlfriend and nephew, the record contains only a few other mentions of Reliford's mental status close in time to his guilty plea. The presentence investigation report notes that while Haley and Ochelata Reliford reported to the investigating probation officer a history of bipolar disorder and paranoid schizophrenia, they had no specific information about medication he was taking. See Record Document 285 at 25. Reliford himself reported to the probation officer that he was taking no medication, and the probation officer recorded observations that Reliford "appears well adjusted with no active symptoms."[9] See id. Of the medical records submitted by Reliford

---

[9] The Court also notes in the presentence investigation report an extremely lengthy history of previous arrests and prosecutions of Reliford. See Record Document 285 at 9–23. Many of the prosecutions resulted in guilty pleas, and none of the incidents note a lack of prosecution due to Reliford's incompetence to stand trial or enter a guilty plea. While these were all prior incidents and do not necessarily reflect on Reliford's

in support of his current motion, only one appears to be from the same year that he entered his guilty plea. See Record Document 602-2 at 9. While the document is undated and contains no administrative data, it appears that it may be a report of an intake screening when Reliford was transferred into a federal Bureau of Prisons facility to serve his sentence. The report notes prior diagnoses of bipolar and schizophrenia in a records system, but that Reliford denied the diagnoses. See id. It also notes that Reliford denied any current psychological symptoms and that the report writer similarly observed "no overt evidence of psycho-pathological process, mental disorder, disabling neurosis or organic brain dysfunction." Id.

Given this evidence in the record, the Court finds that Reliford has not shown that he would have been found incompetent even had Mr. Nader requested a competency hearing (or had Judge Walter ordered one *sua sponte*). Even in the face of a diagnosis of mental illness or the prescription of psychoactive medication, a defendant is not incompetent unless it is shown that the defendant lacked the "rational as well as factual understanding of the proceedings" or was unable to reasonably consult with his attorney. Dusky, 362 U.S. at 402, 80 S. Ct. at 788. "Mental illness and incompetence, . . . are not necessarily coexistent conditions." LaHood v. Davis, 653 F. App'x 253, 263 (5th Cir. 2016) (unpublished) (citations omitted). Reliford has provided no evidence that ties his previous mental health diagnoses or history to an inability to understand the proceedings against him or the nature of what he was bargaining for in his plea agreement. He has therefore failed to show any deficiency in Mr. Nader's performance on this issue, or any likely prejudice. Thus, relief will be denied on this claim.

---

competence at the time he entered a plea of guilty *in this case*, the Court also considers this information as further weighing in favor of a determination that Reliford was in fact competent.

### 6. Ineffective assistance of appellate counsel

Although liberally interpreted above as three separate claims, Reliford's claim that his appellate counsel was ineffective is thinly briefed and refers only to her not consulting with him about the issues he wanted raised on appeal or challenging facts he believed should be at issue. See Record Document 602-1 at 9. Thus, these allegations will all be addressed here as a single claim for simplicity's sake. Claims of ineffective assistance of appellate counsel are reviewed under the same two-prong Strickland standard as claims of ineffective assistance of trial counsel, as described above. See Blanton v. Quarterman, 543 F.3d 230, 240 (5th Cir. 2008). In addition to the appellate record, in which Reliford's appellate counsel restricted her challenges to primarily issues of the substantive reasonableness of his sentence, Reliford has also provided copies of his email communications with his appellate counsel as exhibits to his § 2255 briefing. See Record Document 602-2 at 17–27. The Court finds that this material provides a sufficient record on which to decide the issues on which Reliford bases his appeal-related claims, and thus no evidentiary hearing is necessary.

While Reliford may assert issues of ineffective assistance from his appointed appellate counsel, Ms. Dougherty, the record he provides himself contradicts his assertions. The exhibits Reliford provides show that Ms. Dougherty communicated with him a number of times by email and attempted to explain both her decisions as well as advising him on which claims he was better off raising before this Court later in the context of a § 2255 motion. See, e.g., Record Document 602-2 at 17, 19, 23. On multiple occasions Ms. Dougherty informed Reliford that issues on direct appeal were limited to those which could be shown by way of the record from the trial court, which was effectively

limited to his guilty plea and sentencing. See id. at 17–18. She even notes specifically that some of the issues he attempts to raise, such as his frequent complaints about being subjected to a career offender enhancement, have no merit since—as this Court noted *supra*—the base offense level used to calculate Reliford's Guidelines sentence range would be unaffected regardless of whether the § 4B1.1 career offender enhancement was applied. See id. at 18, 21.

Despite what Reliford may prefer, it is not unreasonable for counsel on appeal to refuse to raise arguments before the appellate court which lack merit or are completely unsupported by the record. Ms. Dougherty, in refusing to raise ineffective assistance of trial counsel on direct appeal, was in fact acting specifically to protect Reliford from possible prejudice by raising such claims with an inadequate record in support, as she explained to him. See id. at 19. She was obviously well aware that Judge Walter's denial without prejudice of Reliford's ineffective assistance claims in his first § 2255 motion would allow him to bring those claims back before this Court on a subsequent such motion with the possibility to supplement the record and improve his chances of success, while raising those claims on direct appeal risked that the Fifth Circuit would simply deny him relief on the merits, forever barring him from seeking further review, or refuse to consider it altogether. See, e.g., United States v. Miller, 406 F.3d 323, 335 (5th Cir. 2005). To the extent Reliford asserts Ms. Dougherty's ineffective assistance for failing to investigate and challenge facts underlying his case, that is also unreasonable, since it is beyond the scope of direct appeal from a guilty plea. Reliford had pleaded guilty to the crime for which he was sentenced and had stipulated under oath and in writing to the factual basis upon which that guilty plea was entered. See Record Documents 253, 253-3. Since Reliford

cannot show that any of Ms. Dougherty's actions as appellate counsel were objectively unreasonable, relief will be denied on his ineffective assistance of appellate counsel claims.

### D. Conclusion

For the foregoing reasons, Reliford's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Record Document 602) is **DENIED** as to all the ineffective assistance of counsel claims more fully discussed above. All other claims are **DISMISSED** for lack of jurisdiction, without prejudice to Reliford's right to file a motion for leave to file a second or successive § 2255 motion in the United States Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. §§ 2244(b)(3)(A) and 2255.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court *may* direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Judge or a District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of March, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT